IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

K.N.,[1]

          Plaintiff,

v.                                                                                  Case No. 24-2461-JWB

FRANK BISIGNANO,
Commissioner of Social Security,[2]

          Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's action requesting judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability benefits. (Doc. 11.) Plaintiff and the Commissioner have each filed a brief. (Docs. 11, 18.) Plaintiff has filed his reply (Doc. 19), and the matter is accordingly fully briefed and ripe for decision. For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

**I.    Facts and Procedural History**

On August 18, 2021, Plaintiff filed an application for disability insurance benefits with the Social Security Administration ("SSA") under Title II of the Social Security Act (the "Act"). (Doc. 8-4 at 2.) Plaintiff claims his alleged onset date ("AOD"), or when his disability began, was July 6, 2021. (*Id*.) Plaintiff's first hearing took place on August 30, 2022, before an Administrative Law Judge ("ALJ"). (Doc. 8-3 at 96.) The ALJ made an "unfavorable" decision, determining that

---

[1] The court will use Plaintiff's initials for privacy concerns.
[2] Frank Bisignano was confirmed by the U.S. Senate to lead the Social Security Administration ("SSA") on May 7, 2025, during the pendency of this case. S*ee Financial Services Industry Leader Frank Bisignano to be the 18th Commissioner of Social Security*, SSA, https://www.ssa.gov/news/en/press/releases/2025-05-07.html (last visited Sept. 9, 2025). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff was not entitled to disability benefits. (Doc. 8-4 at 22.) Plaintiff appealed that determination to the SSA's Appeals Council and, on June 12, 2023, the Appeals Council vacated the ALJ's decision and ordered the case be remanded for additional proceedings. (*Id.* at 39–42.) A second hearing was held on November 2, 2023. (Doc. 8-3 at 31.) On remand, the same ALJ again denied Plaintiff's claim for benefits in a decision dated December 13, 2023. (*Id.* at 29–43.) Plaintiff requested review of that decision by the Appeals Council, which was denied on April 23, 2024. (*Id.* at 16.)

At the second hearing held on November 2, 2023, the ALJ determined that Plaintiff had the following severe impairments: COVID-19 with interstitial lung disease and obesity. (*Id.* at 35.) The ALJ determined, however, that the severe impairments did not meet or equal the criteria of any listed impairment or of a combination of impairments equivalent in severity to a listed impairment. (*Id.* at 37.) The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following relevant limitations: lift and carry 10 pounds occasionally and frequently; stand or walk for two hours out of an eight-hour workday and sit for six hours out of an eight-hour workday; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl, but can never tolerate exposure to atmospheric conditions beyond a level found in an indoor work environment, such as a retail or office space; she should avoid all unusual hazards; and claimant would require the use of portable oxygen while working, by using a handheld compressor that she could take to and from the workstation. (*Id.* at 38.)

Further, the ALJ found that Plaintiff has been unable to perform any past relevant work as of December 13, 2023. (*Id.* at 41.) Ultimately, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, she was able to perform jobs that exist in significant

numbers in the national economy, to include document preparer, telephone solicitor, and telephone information clerk. (*Id*. at 41–42.) As such, the ALJ determined that Plaintiff was not entitled to receive disability benefits. Plaintiff thus filed the instant complaint seeking review of that decision.

**II.     Standard**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Substantial evidence requires more than a scintilla and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). "Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the [Commissioner's] conclusions are rational." *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *See Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of

disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 404.1545. The RFC represents the most that the claimant can still do in a work setting despite his impairments. *See Cooksey v. Calvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(e)-(g).

At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id*.; *Thompson v.*

*Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  *Thompson*, 987 F.2d at 1487 (citations omitted).

**III.    Analysis**

Plaintiff makes two primary challenges to the ALJ's decision.  First, she contends that the ALJ failed to properly evaluate listing 3.02 when assessing Plaintiff's chronic respiratory diseases. (Doc. 11 at 1.)  Second, she contends that the ALJ failed to adequately account for Plaintiff's limitations related to her need for supplemental oxygen when assessing and determining Plaintiff's RFC.  (*Id*.)  The court considers each of Plaintiff's arguments in turn.

**A. The ALJ's Determination at Step Three of the Disability Analysis Regarding Plaintiff's Chronic Respiratory Disease Is Supported by Substantial Evidence**

Plaintiff contends the evidence shows that her interstitial lung disease met the requirements under listing 3.02C3 and thus should be presumed severe enough to render her disabled.  (Doc. 11 at 9.)  The listing is met when a claimant has a chronic impairment of gas exchange demonstrated by oxygen saturation percentage (SpO2) levels less than or equal to a value based on the altitude at the test site, measured by pulse oximetry either at rest or during or after a 6-minute walk test. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.02C3.  To be considered disabled under the listing, an individual's SpO2 is measured by that person's pulse oximetry and, at the relevant altitude, requires a measurement equal to or less than 87%.  *See id*.  The introduction to the listing explains the various requirements for the pulse oximetry test.  Among them include that the claimant must be "medically stable" at the time of the test (*see id.* § 3.00E2a); the measurements must be recorded on room air without oxygen supplementation; the pulse oximetry measurement must be stable over a 15-second interval; and the report must include the claimant's name, date of test, the altitude or location of the test, and a graphical printout of the SpO2 value and pulse wave. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00H.  Plaintiff cites her September 2021

5

primary care appointment, where her SpO2 was recorded at 77% (Doc. 8-16 at 151), and her December 2021 primary care appointment, where her SpO2 was recorded at 79% (*Id*. at 273), as sufficient evidence that she meets the listing criteria under § 3.02C3 and thus should be considered disabled under step three. (Doc. 11 at 10–12.) However, the court finds this evidence inapplicable under the listing.

Listing 3.02C3 explains that the "requirements for an acceptable [oximetry] test" require Plaintiff to be "medically stable." *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 3.00E2a. "A claimant is not regarded as medically stable if [s]he is '[e]xperiencing, or within 30 days of completion of treatment for, a lower respiratory tract infection.'" *Brister M. v. Kijakazi*, No. 120CV02426SEBTAB, 2022 WL 969655, at *2 (S.D. Ind. Mar. 31, 2022) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 3.00E(2)(a)(ii)). Here, Plaintiff's medical note from her September 17, 2021, primary care appointment with Dr. Amanda Ruxton, where her SpO2 was recorded at 77%, occurred just 12 days after she was discharged from the rehabilitation hospital where she was being treated for respiratory failure. (Doc. 8-16 at 25, 151.) This is, obviously, much less than the 30-day requirement under the listing. (Doc. 8-16 at 151.)

Moreover, neither the SpO2 test in September nor December 2021 contained the required documentation for an "acceptable" oximetry test under the listing, such as the stability of the measurements over 15-second intervals, graphical displays of the SpO2, and pulse waves. (*Id*. at 151, 273.) Further, Plaintiff admits that when the 79% SpO2 recording was taken in December 2021, that she was not "breathing room air" as is required for a valid oximetry test under listing 3.02C3. (*Id*. at 273 ("[W]ith ambulation [Plaintiff's] oxygen has dropped down 79% while on oxygen.")). The cumulative effect of these deficiencies demonstrates why the ALJ did not consider

6

the September and December 2021 test results as reliable when evaluating Plaintiff's compliance with the listing criteria.

Listed impairments are purposefully set at a high level of severity because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Here, the ALJ found that Plaintiff's impairments did not meet or equal any listings, including listing 3.02C3. (Doc. 8-3 at 36–39.) The ALJ specifically addressed the Plaintiffs respiratory infection and subsequent rehabilitation. (*Id*. at 38–39.) The ALJ addressed Dr. Ruxton's saturation readings at appointments, including the ones at issue. (*Id*.) Moreover, the ALJ expressly mentions Plaintiff's pulmonary function test—performed on September 9, 2022 (Doc. 8-16 at 285)—that indicated findings of only mild abnormalities that do not satisfy the requirements outlined in listing 3.02. (Doc. 8-3 at 37.)

Overall, the ALJ spends a good portion of his decision explaining the evidence concerning Plaintiff's chronic respiratory disease. *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009) (explaining that decisions of an ALJ must be read "as a whole."). Because Plaintiff has failed to provide any medically acceptable test showing she satisfies the requirements for a valid oximetry test under listing 3.02C3, she has failed to carry her burden as to step three. *S. H. v. Comm'r of Soc. Sec.*, No. 21-1016-JWB, 2022 WL 103280, at *2 (D. Kan. Jan. 11, 2022) (citing *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006) ("The claimant bears the burden of proof through step four of the analysis.")); *Duncan v. Colvin*, 608 F. App'x 566, 576 (10th Cir. Apr. 2, 2015) ("Because [the claimant] has not satisfied all of the Listing's criteria, she cannot prevail at step three as a matter of law."). As such, the ALJ committed no legal error at step three of his decision, in that he applied the relevant listings in a manner contemplated by the regulations in finding that the "Covid-19 with interstitial lung disease" and "obesity" impairments, both individually and

combined, did not meet the listings, and the reasons he cited were relevant and determinative. (Doc. 8-3 at 37.) *See* 20 C.F.R. § 404.1526(a); 20 C.F.R. Part 404, Subpart. P, App. 1, §§ 3.02, 3.03; *Noreja v. Commissioner*, SSA, 952 F.3d 1172, 1178 (10th Cir. 2020) (holding that the court's role is limited to ensuring the ALJ's decision is supported by substantial evidence).

Finally, Plaintiff attempts to frame the Commissioner's Response (Doc. 18.), which characterizes Plaintiff's September and December 2021 oximetry readings as not "acceptable" tests under listing 3.02C3, as "*post hoc* rationalization." (Doc. 19 at 3 (citing Doc. 18 at 9–14).) As Plaintiff argues, "the ALJ did not even mention the criteria of Listing 3.02C3 much less did he analyze it." (*Id.* (citing *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004)).) Hence, Plaintiff argues that this court cannot consider the Commissioner's arguments if they are not expressly found in the ALJ's decision. (*Id.*)[3] Plaintiff mischaracterizes the Commissioner's response as impermissible post-hoc rationalization.

Under Tenth Circuit precedent, courts will not "adopt post-hoc rationalizations to support the ALJ's decision that are not *apparent* from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) (emphasis added). That is not the case here. While the ALJ did not specifically address listing 3.02C3, it is apparent from the ALJ's decision that he had "considered all of the claimant's impairments" and found that "the evidence does not reflect repeat . . . pulmonary testing with listing level values as outlined in listing 3.02," which includes listing 3.02C3. (Doc. 8-3 at 39.) The ALJ had already discussed the insufficient pulmonary function testing in his later RFC analysis, and it is thus apparent from the ALJ's decision that the reason he did not evaluate the September and December 2021 oximetry readings under listing 3.02C3 was

---

[3] The court notes that the ALJ did, in fact, mention that the "only" current pulmonary functions study on record was the pulmonary function studies performed on September 9, 2022. (Doc. 8-3 at 40.) This clearly implies that the ALJ considered the Plaintiff's other "tests"—such as those oximetry readings from September and December 2021—and rendered them unusable under the listing.

8

that he concluded they were not appropriate tests in the first instance under listing 3.02. The Commissioner's response therefore does not constitute post-hoc rationalization but rather articulates reasoning that is apparent from the ALJ's decision itself.

However, Plaintiff's argument fails on a more fundamental level because it assumes the ALJ was required to conduct the detailed analysis of the listing that Plaintiff demands. (Doc. 19 at 3.) While the ALJ did not explicitly analyze each step under listing 3.02C3 as Plaintiff has suggested he should, the ALJ was "not required" to do so. *See Rene M. v. Kijakazi*, No. 20-CV-1371-EFM, 2023 WL 143228, at *4 (D. Kan. Jan. 10, 2023) (citing SSR 17-2P, 2017 WL 3928306, at *4) (Mar. 27, 2017) (providing that "the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment" and further, "a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.").

The ALJ's analysis here satisfies this standard. Rather than ignoring the listing requirements, as Plaintiff suggests, the ALJ pointed to the medical evidence that most closely qualifies as an "acceptable test" (*see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 3.00E2a), compared it to the Plaintiffs medical evidence (Doc. 8-3 at 37 (citing Doc. 8-16 at 285)) and found that her individual impairment (and combined impairments) did not equal any listed impairment under listing 3.02. (Doc. 8-3 at 37.) In making this decision, the ALJ is required to consider all of the evidence but need only discuss the evidence necessary to properly adjudicate the claim. *See Clifton v. Chater*, 79 F.3d 1007, 1009–1010 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Here, the ALJ did just that. (Doc. 8-3 at 37.) ("The undersigned has considered all of the claimant's

9

impairments individually and in combination but can find no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the Listings.").

The court concludes that the ALJ's discussion of the listings under 3.02—which includes the ALJ's discussions from the entire decision, not just his step-three analysis—was sufficient to allow for meaningful judicial review. *See Rene M.*, 2023 WL 143228, at *4 (citing *Angelyn H. v. Kijakazi*, 2022 WL 1665014, at *2 (D. Utah 2022) (holding the ALJ's "discussion of the evidence at later steps in the sequential process was sufficient to allow for review.")). The ALJ complied with his obligation at step three, and the Court finds no error requiring remand. Here, "the ALJ's failure specifically to discuss the pieces of evidence [that Plaintiff] identifies is not reversible error." *Korum v. Astrue*, 352 F. App'x 250, 253 (10th Cir. 2009).

If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's RFC. 20 C.F.R. §§ 404.1520, 404.1545. Thus, the court proceeds to Plaintiffs second primary issue involving the ALJ's assessment of Plaintiff's RFC. (Doc. 11 at 12–17.)

### B. The ALJ's Determination of Plaintiff's RFC Regarding Limitations Related to her Need for Supplemental Oxygen Is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in determining her RFC by not adequately accounting for work limitations related to her supplemental oxygen. (Docs. 11 at 12–17.) Specifically, Plaintiff alleges the ALJ improperly determined her RFC on two grounds: (1) by not including an accommodation in the RFC for additional work breaks for her to re-saturate her oxygen levels and changing out oxygen tanks and (2) only including the use of Plaintiffs handheld portable oxygen compressor in the RFC and not her full-sized oxygen tanks or her need to take breaks to re-saturate her oxygen levels. (Docs. 11 at 12–17; 19 at 4–5.)

These arguments might be more persuasive if the court were the finder of fact operating under a *de novo* standard of review. But they are ultimately unavailing because "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The question is not whether there is any evidence that could sustain a finding of disability; rather, it is whether there is substantial evidence to support the ALJ's findings. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). The ALJ's decision shows that he considered the objective medical evidence, Plaintiff's statements and statements from other individuals including Plaintiff's employer, and other factors under the regulation. *See* 20 C.F.R. 404.1529(c). After reviewing the ALJ's decision and the record, the court concludes the ALJ's RFC determination is supported by substantial evidence.

The ALJ's decision acknowledged and addressed Plaintiff's physical impairments, including COVID–19 with interstitial lung disease and obesity. (Doc. 8-3 at 35.) The ALJ further considered Plaintiff's various self-reported symptoms from both of her hearings (*see id*. at 50–125), including that she experiences an inability to work due to fatigue, shortness of breath, and the use of supplemental oxygen with and without exertion secondary to the residual effects of COVID–19 infection. (*Id*. at 37.) The ALJ found Plaintiff's impairments could reasonably cause her self-reported symptoms but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*. at 40.) *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (explaining that subjective complaints of pain must be accompanied by some medical evidence and may be partially disregarded if unsupported by any clinical findings). The ALJ's decision

recounted some of the evidence relating to these symptoms, including evidence that supported them and evidence indicating the symptoms were not as severe as Plaintiff had reported. (*Id.*) For example, the ALJ discussed a pulmonary function study performed on September 9, 2022, that, among other things, showed that Plaintiff's "FEV1 [forced expiratory volume exhaled in the first second] was normal, with no evidence of obstructive ventilatory defect and only mild ventilatory defect based on reduction in FVC [forced vital capacity] and TLC [total lung capacity]." (*Id.* at 38–40 (acronyms defined in brackets for clarity).) The ALJ further noted that the Plaintiff had only seen her doctor twice since that test, which was inconsistent with Plaintiff's testimony and her work supervisor that she frequently has to miss work or leave work early at her part-time job due to treatment. (*Id.* at 39 (citing Doc. 8-16 at 313–24).)

The ALJ's decision cited additional evidence in support of the RFC findings. The ALJ recognized objective medical findings supporting Plaintiff's claims of shortness of breath and needing supplemental oxygen and therefore included in the RFC that Plaintiff "would require the use of portable oxygen while working, by using a handheld compressor that she could take to and from the workstation." (Doc. 8-3 at 38.) The ALJ noted that Plaintiff is currently doing that very thing while she is working part-time, about 15 hours per week. (*Id.* at 39.)

The ALJ also considered the various medical opinions in the record, including those of Dr. Amanda Ruxton. The ALJ found Dr. Ruxton's opinions on Plaintiff's limitations (such as Plaintiff could rarely lift 10 pounds, not sustain more than 2 hours of sitting, and entirely unable to sustain an 8-hour workday) unpersuasive. (*Id.* at 40–41.) The ALJ noted that these severe limitations were not well-explained and were, in fact, inconsistent with the objective medical record. (*Id.*) Specifically, Dr. Ruxton diagnosed Plaintiff with an abnormal cardiac function test, right ventricular hypertrophy, and significant hypoxia with exertion that "limited [Plaintiff's] ability to

12

focus on any other activity." (*Id*. at 37–38.) However, a study Plaintiff obtained from Newman Regional Health, showed normal right ventricle size (Doc. 8-16 at 185); a CT scan was performed due to positive hypoxia in July 2021 and mild cardiomegaly was noted but there is no mention of right ventricular hypertrophy (*id*. at 211); and the pulmonary function test ordered by Dr. Ruxton shows only mild restrictive ventilatory defect, and mild reduction in diffusion capacity. (*Id*. at 313–24.) Accordingly, the ALJ pointed out that the objective medical evidence does not support the severity of restrictions and limitations cited in Dr. Ruxton's opinion. (Doc. 8-3 at 41.)

There was nothing improper in the manner in which the ALJ assessed the persuasiveness of Dr. Ruxton's opinions. Under the regulations, an ALJ is required to consider the persuasiveness of a medical opinion using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." 20 C.F.R. § 404.1520c(c). "The factors of supportability . . . and consistency . . . are the most important factors" in determining persuasiveness. *Id*. § 404.1520c(a). The ALJ followed that framework here, noting the lack of support or explanation for the limitations indicated by Dr. Ruxton, and citing other medical opinions that were inconsistent with those limitations. Specifically, the ALJ noted that Dr. Ruxton's statement that Plaintiff has "limitations to overall activity" is vague. (Doc. 8-3 at 41.) In making his specific findings as to Plaintiff's RFC, the ALJ cited the medical opinions of two State agency medical consultants, Michael Canham, M.D., and David Gillum, M.D., who opined that Plaintiff "is able to perform a range of sedentary work" consistent with the objective medical findings, such as occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk (with normal breaks) for a total of 2 hours; sit (with normal breaks) for a total of about 6 hours in an 8 hour workday. (*Id*. at 40 (citing Doc. 8-4 at 8).)

13

The ALJ considered the entirety of the record, weighed evidence relating to the severity of Plaintiff's symptoms (including objective medical evidence along with Plaintiff's subjective medical evidence), and concluded Plaintiff was capable of performing the RFC outlined in the ALJ's opinion. (Doc. 8-3 at 41.) The ALJ found the opinions of Drs. Canham and Gillum "persuasive" because their prior medical findings are supported and consistent with the objective and substantial medical evidence of the record and, particularly, the pulmonary function studies performed on September 9, 2022, which was the "only" current pulmonary functions study on record. (*Id*. at 40.)

In support of his findings, the ALJ cited medical opinions, objective examinations, and testimony from Plaintiff and Plaintiff's employer, Ms. Mayr. (*Id*. at 38–41.) Substantial evidence requires "more than a mere scintilla," but the threshold "is not high." *See Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). This standard requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted). Here, the ALJ assessed all symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The evidence cited by the ALJ, taken as a whole, could be accepted by a reasonable person as adequate to support the RFC findings set forth in his opinion. (*Id*. at 31–42.)

Plaintiff bore the burden of showing what limitations should have been included in her RFC assessment. *See Howard v. Barnhart*, 379 F.3d 945, 948-49 (10th Cir. 2004) ("We disagree with claimant's implicit argument that the agency, not the claimant, has the burden to provide evidence of claimant's functional limitations."). As such, the contrary evidence cited by Plaintiff in her brief does not rise to a sufficient level in order to undermine this conclusion. "The mere fact that there is evidence which might support a contrary conclusion is not sufficient to show error

on the part of the ALJ." *Tammy F. v. Saul*, No. 20-1079-JWL, 2020 WL 7122426, at *7 (D. Kan. Dec. 4, 2020); *S. H.*, 2022 WL 103280, at *4 (D. Kan. Jan. 11, 2022) (same); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's.").

In conclusion, the court finds that the ALJ's evaluation of Plaintiff's impairments in developing the RFC, specifically Plaintiff's need for supplemental oxygen, was consistent with the regulations and case law, and was supported by substantial evidence. (*See* Doc. 8-3.) Further, the court concludes that the ALJ's discussion of the listings under 3.02 was sufficient to allow for meaningful judicial review. (*Id.*) Although there may be evidence which lends support to Plaintiff's position, the court is not to reweigh the evidence. The court must affirm an ALJ's decision if substantial evidence supports that decision. *See Tarpley*, 601 F. App'x. at 643. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. That much exists in this case.

**IV.     Conclusion**

The Commissioner's decision denying Plaintiff's application is AFFIRMED. The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED. Dated this 6th day of October, 2025.

                                                 s/ John W. Broomes
                                              JOHN W. BROOMES
                                              CHIEF UNITED STATES DISTRICT JUDGE